# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| JANELLE WOODSON, DANA BERKLEY, JESSICA BLOSWICK, and BECKY BROWN, on behalf of themselves and all others similarly situated, | Case No. 2:20-cv-1069 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| Evenflo Company, Inc., | |
| Defendant. | |

Plaintiffs Janelle Woodson, Dana Berkley, Jessica Bloswick, and Becky Brown, on behalf of themselves and all others similarly situated, allege the following against Defendant Evenflo Company, Inc.

## SUMMARY OF CASE

1.     Evenflo introduced its redesigned "Big Kid" line of booster car seats in 2008 as a major advancement in child safety. Evenflo aggressively marketed the safety of the seats, including by claiming they were "side impact tested," exceeded all applicable federal safety standards, and were safe for children as light as 30 pounds. Evenflo's safety-centric marketing paid off. Evenflo has sold over 18 million Big Kid seats, constituting a major share of the booster-seat market.

2.     But videos from Evenflo's side impact collision "safety" testing and recently released documents from personal injury lawsuits reveal that Evenflo's safety-focused marketing campaign was highly misleading. When child-sized crash dummies seated in Big Kid seats were

1

subjected to side impact collisions, they were thrown far out of their shoulder belts, which would cause serious injuries to children in the event of a real accident:







3. The videos and documents show that the Big Kid seat is especially dangerous for children under 40 pounds, who—despite Evenflo's marketing—never should have been using a booster seat in the first place.

4. Evenflo nevertheless continued its misleading marketing campaign and kept the truth a secret. Evenflo confidentially settled a series of lawsuits where children in the seats had suffered spine and brain injuries during side impact collisions. And the company suppressed internal research and warnings that showed the Big Kid seat was especially dangerous for children under 40 pounds.

5. Evenflo's conduct needlessly endangers children, unjustly enriches Evenflo at consumers' expense, and violates state consumer protection and warranty laws. Plaintiffs bring this suit on behalf of themselves and the proposed classes to enjoin Evenflo from continuing to mislead consumers about the safety of its seats and to provide remuneration to themselves and the other members of the proposed classes.

## PARTIES

6.    Plaintiff Janelle Woodson is a resident of Columbus, Ohio, in Franklin County. Plaintiff Woodson purchased an Evenflo Big Kid seat in Columbus, Ohio, in 2018.

7.    Plaintiff Dana Berkley is a resident of Albany, New York, in Albany County. Plaintiff Berkley purchased an Evenflo Big Kid seat in Albany, New York, in 2018.

8.    Plaintiff Jessica Bloswick is a resident of Salt Lake City, Utah, in Salt Lake County. Plaintiff Bloswick purchased an Evenflo Big Kid seat in Salt Lake City, Utah, in 2018.

9.    Plaintiff Becky Brown is a resident of Danville, Indiana, in Hendricks County. Plaintiff Brown purchased an Evenflo Big Kid seat in Greenwood, Indiana, in 2019.

10.    Defendant Evenflo Company, Inc., is a Delaware corporation with its headquarters and principal place of business at 225 Byers Road, Miamisburg, Ohio 45342. Evenflo is a wholly owned subsidiary of Goodbaby International Holdings, Ltd.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed $5,000,000, exclusive of interest and costs, and this is a class action in which diversity exists between members of the proposed classes and Defendant.

12.    Venue is proper in this District under 28 U.S.C. § 1391 and S.D. Ohio Civ. R. 82.1 because Evenflo is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

13.      Evenflo designs, manufactures, markets, and distributes child-related products in the United States under the Evenflo brand name. Among those products is the Big Kid line of booster-style car seats.

**I.      Evenflo redesigns the Big Kid seat and deceptively claims the seat is safe in side impact collisions.**

14.      In 2008, to make its seat look more like a competitor's better selling booster seat, Evenflo added "side wings" to the Big Kid seat—curved extensions that protrude from the backrest. Although Evenflo told consumers the new design made the Big Kid seat safer, documents recently published by ProPublica show Evenflo admitting internally that the change was purely aesthetic; the only benefit was "increased *perceived* side protection."[1]

15.      Evenflo concurrently launched an advertising campaign that emphasized that the Big Kid seat had been "Side Impact Tested" and "Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." As depicted below, in addition to being touted on Evenflo's website, these types of statements appeared on the Big Kid seats' boxes and on the seats themselves:

---

[1] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety
(emphasis added)





16. Evenflo's website reiterates these messages, claiming that the company's "Side Impact test protocol" simulates government tests for side impact collisions in automobiles and "meet[s] or exceed[s] all applicable federal safety standards and Evenflo's side impact standards":[2]

## Evenflo Side Impact Testing

Evenflo Side impact testing simulates a crash in which the vehicle carrying the car seat is struck on the side by another vehicle. An example of a real life side impact collision is when a car crossing an intersection is struck on the side by another car that ran a stop sign.

## What is the Evenflo Side Impact Testing?

At Evenflo, car seat safety is a top priority. That's why we have created the Evenflo Side Impact test protocol. The Evenflo Side Impact test protocol was developed by Evenflo engineers using state-of-the-art facilities. The rigorous test simulates the energy in the severe 5-star government side impact tests conducted for automobiles.

All Evenflo car seats meet or exceed all applicable federal safety standards and Evenflo's side impact standards.

For car seat safety that you can depend on, trust Evenflo. Shop our collection of side impact tested car seats today.

17. Evenflo's statements that its "Side Impact test protocol" for Big Kid seats "meet[s] or exceed[s] all applicable federal safety standards" suggest that the federal government

---

[2] https://www.evenflo.com/safety-learning/safety-learning.html

has imposed standards for car seats and that Evenflo's Big Kid seat more than satisfies those standards.

18. In reality, the agency responsible for transportation safety regulations, the National Highway Transportation Safety Administration (NHTSA), does not have any required—or even standard—test for side impact collisions for child seats. Neither does any other federal agency.

19. And even under Evenflo's own testing standards, the Big Kid seat showed no appreciable improvement in safety for children in a side impact collision.

20. Newly released videos and documents show that Evenflo knew for years that its redesigned Big Kid seat is *not* better-equipped to safeguard children in the event of a side impact collision. These videos show child-sized dummies flying outside the boundaries of the booster seat, which would endanger a real child's head, neck, and spine:



21. The purpose of a seat belt is to distribute the crash forces over the strong bones of the body—the shoulders and hips. But with the Big Kid seat, Evenflo's test showed the belt

slipped off the shoulder and wound up pulled around the child dummy's abdomen and ribs. In a real collision, that could lead to children suffering internal organ damage.

22. Evenflo later admitted that its internal standard for "passing" its side impact test was that the dummy not fall out of the chair and onto the floor, what Evenflo calls "dummy retention." Jeremy Belzyt, an Evenflo senior test technician whose job involved crash testing the Big Kid seat, explained "dummy retention" as: "It's just did it stay in the seat or did it fall out of the seat and end up on the floor." Evenflo also admitted if a real child's body moved the way the dummy did in its side impact test, the child could be paralyzed, suffer brain damage, or die.[3]

23. For example, Evenflo admits that each of the following slides would be marked as "dummy retention," and passing Evenflo's test:



_____

[3] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety







24.     The only other way for the booster seat to "fail" under Evenflo's standards was for the chair to break into pieces. Not surprisingly, Belzyt, who worked at Evenflo for 13 years, said in an interview with ProPublica that he never performed a side impact test on a booster that was deemed a failure.[4]

25.     In response to ProPublica's reporting, the U.S. House of Representatives Committee on Oversight and Reform launched an investigation into Evenflo's Big Kid seat marketing and testing practices. The Committee's letter, sent to Evenflo's CEO on February 12, 2020, noted that while "Evenflo has marketed the 'Big Kid' as safe and 'Side Impact Tested' . . . . [t]hat safety representation appears to be inconsistent with the video evidence of side impact testing. In fact your company's internal tests appear to show that side impacts could put children sitting in the 'Big Kid' seat in grave danger."[5]

---

[4] *Id.*

[5] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-02-12.RK%20to%20Chamberlain-Evenflo%20re%20Big%20Kid%20Seat1.pdf

26.     But Evenflo never disclosed this to parents. Instead, Evenflo hid the truth about its side impact testing and continuously touted the Big Kid seat as "side impact tested" in marketing the seat to consumers. Despite knowing the dangers its Big Kid seat poses to children, Evenflo gives consumers false security by suggesting the Big Kid seat performs well in side impact testing and that it meets or exceeds federal standards that don't really exist.

**II.     Evenflo misrepresents the safe minimum weight for the Big Kid seat.**

27.     Evenflo's representations that its Big Kid seats are safe for children as small as 30 pounds are also dangerously deceptive. Not only does the under-40-pounds claim contradict federal guidelines, but it's inconsistent with prevailing research about car seat safety as acknowledged internally within the company.

28.     Newly released documents show Evenflo knew its Big Kid seats posed special danger to smaller children, but continued to market them as safe for children as small as 30 pounds, suppressing research and ignoring warnings to the contrary.

29.     Child safety seats fall into three general categories: rear-facing, forward-facing harness, and booster.



**Rear-Facing Car Seat**     **Forward-Facing Car Seat**     **Booster Seat**

30.     Rear-facing seats have a harness and are designed to cradle and move with a child in a crash to reduce the stress to the child's fragile neck and spinal cord. Forward-facing seats have a harness system and tether that go over the child's shoulders and between the legs to limit forward movement during a crash. Booster seats function by positioning the child so that both

12

the lap and shoulder portions of the vehicle's seat belt fit properly over the stronger parts of the child's body.[6]

31.    The three types of car seats are progressively less restrictive—and therefore less safe—and are meant to accommodate children as they grow older and larger.

32.    For that reason, both NHTSA and the American Academy of Pediatrics (AAP), the most widely cited and respected experts on the issue, are unequivocal in their recommendations: delay transitions from one seat type to the next as long as possible.

33.    Since at least 1989, the AAP has recommended that children use forward-facing harnessed seats until they reach at least 40 pounds. In a widely publicized safety announcement released in 2011, the pediatrician group put a finer point on it. In the statement, the AAP recommended that parents use rear-facing seats until their child reaches at least 35 pounds, and then move to forward-facing seats with five-point harnesses for as long as possible—up to 80 pounds or seven years old. By then, maximum weights on many harnessed seats had reached 65 to 80 pounds, so the pediatrician group emphasized that children four to seven years old should remain in those seats and only switch to boosters when they outgrew their harnessed seats: "There is a safety advantage for young children to remain in car safety seats with a harness for as long as possible before transitioning to booster seats."[7] The *lowest* maximum weight for five-point harness chairs at that time—and therefore the earliest a child should transition to a booster-style seat—was 40 pounds.

34.    NHTSA released guidelines in 2011 that echoed AAP's recommendations.[8]

---

[6] https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/nhtsacarseatrecommendations.pdf

[7] https://pediatrics.aappublications.org/content/pediatrics/early/2011/03/21/peds.2011-0213.full.pdf

[8] https://one.nhtsa.gov/portal/site/NHTSA/menuitem.554fad9f184c9fb0cc7ee21056b67789/?vgnextoid=47818846139ce210VgnVCM10000066ca7898RCRD&vgnextchannel=c9f64dc9e66d5210VgnVCM100000656b7798RCRD&vgnextfmt=default

35.     Contrary to these organizations' recommendations, Evenflo has marketed its Big Kid seat as safe for children as small as 30 pounds since it was first released in the early 2000s.

36.     Even after the 2011 AAP policy statement and the NHTSA guidelines, Evenflo continued to tell parents that its Big Kid seats were safe for children as small as 30 pounds, listing the minimum weight on the box:



37.     The same minimum weight is listed directly on the seat in several places, and in the owner's manual Evenflo distributes with the chair:







38.    As recently as July 2019, Evenflo's website similarly represented that its Big Kid

seats were safe for children as small as 30 pounds:



16

39.     Evenflo has known that its recommendations were unsafe since at least 2009. That year, the family of a four-year-old boy sued Evenflo after he suffered a traumatic brain injury seated in a Big Kid seat during a side impact collision. At the time of the crash, he weighed 36 pounds.

40.     The families of several children of similar weights also sued Evenflo when their Big Kid seats failed to protect them in side impact accidents. One child suffered a traumatic brain injury; another was paralyzed after suffering from internal decapitation, where the ligaments of the spine are severed from the skull.

41.     Evenflo settled those cases confidentially and the records were sealed until a few weeks ago. The newly released evidence, published by ProPublica, shows that behind the scenes, Evenflo was suppressing research and knowingly selling an unsafe product.

42.     These documents show that Evenflo's former top safety engineer, Eric Dahle, recommended to executives as early as 2012 that the company stop selling booster seats for children under 40 pounds. Dahle cautioned there was an "increased risk of injury" for smaller children riding in boosters instead of seats with harnesses, and that "[k]eeping the seat at 30 lbs encourages parents to transition them earlier because they can, and the booster is a less expensive option." Evenflo should discourage early transitions, Dahle wrote, because a harnessed seat "is the better option. We should encourage that behavior by modifying the weight rating to 40 lbs."[9]

43.     The safety engineer's recommendation was supported by all of the available government research, including a 2010 federal report on booster seat effectiveness, which looked at a decade of crash data. The report showed that 3- and 4-year-old children had a reduced risk of injury in crashes when they were using harnessed seats rather than boosters and that early

---

[9] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety

graduation to boosters may "present safety risks." Another section said that children should remain in harnessed seats until they are 4-years old or weigh 40 pounds, and that harnessed seats may offer more side support and "better containment" for smaller children in crashes.

44.     In Canada, Evenflo was already marketing its Big Kid seats for children 40 pounds and larger to comply with tighter Canadian regulations, that haven't allowed the sale of boosters to children under 40 pounds since 1987. On its Canadian labeling, Evenflo warned parents that a child less than 40 pounds risked "SERIOUS INJURY or DEATH" using the same models it sold as safe for children as small as 30 pounds in the U.S.

45.     But an executive "vetoed" Dahle's recommendation that Evenflo align its U.S. marketing practices with the NHTSA and AAP guidelines, government research, and Canadian regulations, and Evenflo continued to market the seats as safe for children as small as 30 pounds. Later that year, Dahle raised the subject again, and the same executive, the vice president of marketing and product development, again rejected Dahle's recommendation:[10]

```
FROM: Featherstone, McKay
SUBJECT: RE: amp fixtures
Date: Wednesday, July 25, 2012 9:33 AM

Gregg, why are we even talking about this? It has always been this way
in Canada so I don't understand why it is now a big problem that
requires a $30k investment or us to change product. I have looked at
40 lbs for the US numerous times and will not approve this.
```

46.     In response to ProPublica's reporting, Evenflo has updated the minimum weight for its Big Kid seats from 30 to 40 pounds on its website.

---

[10] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety

47.     But it is still possible to purchase Evenflo Big Kid seats with the out-of-date, unsafe parameters. ProPublica reported that in January of this year, it was able to order two Big Kid seats directly from Evenflo's website with boxes, owner's manuals, and labels that said they were safe for children weighing as little as 30 pounds.[11]

48.     In fact, as of February 23, 2020, the online version of the owner's manual for the Big Kid, available on Evenflo's website, still lists the age range as 30 to 110 pounds:[12]



---

[11] *Id.*

[12] https://www.evenflo.com/on/demandware.static/-/Sites-evenflo-Library/default/dwd07b5009/Instruction%20Manuals/BK%20Right%20Fit-25703198.pdf

**III.     Evenflo's deceptive practices and unlawful conduct continue to harm consumers.**

49.     As a result of Evenflo's misrepresentations and omissions, millions of consumers were duped into buying seats that were not as safe as advertised.

50.     To this day, parents and guardians are unwittingly risking their children's safety due to Evenflo's conduct as Evenflo has never recalled the seats, never issued warnings to parents, and never corrected its marketing claims.

51.     Evenflo has profited and continues to profit from its misleading marketing and omissions by selling more seats than it would have otherwise, and at higher prices than it would be able to sell them for but for its deceptive conduct.

**<u>TOLLING OF THE STATUTE OF LIMITATIONS</u>**

52.     <u>Discovery Rule</u>: Plaintiffs' and class members' claims accrued upon discovery of the facts described above. While Evenflo knew, and concealed, these facts, Plaintiffs and class members could not and did not discover these facts through reasonable diligent investigation, until, at earliest, when ProPublica published its report on Evenflo's conduct on February 6, 2020.

53.     <u>Active Concealment Tolling</u>: Any statutes of limitations are tolled by Evenflo's knowing and active concealment of the facts set forth above. Evenflo kept Plaintiffs and class members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on Plaintiffs' or class members' part. The details of Evenflo's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery. Plaintiffs and class members could not have reasonably discovered these facts, nor that Evenflo failed to disclose material facts concerning its Big Kid seats' safety and performance.

54.     <u>Estoppel</u>: Evenflo was and is under a continuous duty to disclose to Plaintiffs and class members the true character, quality, and nature of its Big Kid seats. At all relevant times,

and continuing to this day, Evenflo knowingly, affirmatively, and actively concealed the true

character, quality, and nature of its Big Kid seats. The details of Evenflo's efforts to conceal its

above-described unlawful conduct are in its possession, custody, and control, to the exclusion of

Plaintiffs and class members, and await discovery. Plaintiffs and class members reasonably

relied on Evenflo's active concealment, and Evenflo is therefore estopped from relying on any

statutes of limitation in defense of this action.

55.     <u>Equitable Tolling</u>: Evenflo took active steps to conceal and misrepresent material

facts relating to its Big Kid seats' safety and performance. The details of Evenflo's efforts are in

its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await

discovery. When Plaintiffs learned about this material information, they exercised due diligence

by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should

such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the

doctrine of equitable tolling.

## CLASS ACTION ALLEGATIONS

56.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this

action on behalf of themselves and the following proposed classes:

<u>Ohio Class</u>:

*All persons who purchased an Evenflo "Big Kid" booster seat in Ohio between 2008 and*

*the present.*

<u>Indiana Class</u>:

*All persons who purchased an Evenflo "Big Kid" booster seat in Indiana between 2008*

*and the present.*

21

<u>New York Class</u>:

*All persons who purchased an Evenflo "Big Kid" booster seat in New York between 2008 and the present.*

<u>Utah Class</u>:

*All persons who purchased an Evenflo "Big Kid" booster seat in Utah between 2008 and the present.*

57. Excluded from each of the proposed Classes are Evenflo; any affiliate, parent, or subsidiary of Evenflo; any entity in which Evenflo has a controlling interest; any officer, director, or employee of Evenflo; any successor or assign of Evenflo; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff.

58. **Numerosity**. Evenflo has sold over 18 million Big Kid seats, including a substantial number in Ohio, Indiana, New York, and Utah. Members of the proposed Classes are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

59. **Commonality and Predominance**. Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual Class members. These common questions include:

    a. Whether the marketing for Evenflo's Big Kid seat is deceptive;

    b. Whether Evenflo knowingly omitted material information in connection with its marketing and distribution of Big Kid seats;

    c. Whether Evenflo's actions violate state consumer-protection statutes;

    d.   Whether Evenflo was unjustly enriched at the expense of Plaintiffs and Class members;

    e.   Whether Evenflo breached implied warranties to Plaintiffs and Class members; and

    f.   Whether Plaintiffs and Class members are entitled to injunctive relief.

60.    **Typicality**.  Plaintiffs' claims are typical of the claims of members of the proposed Classes.  Plaintiffs and the members of the proposed Classes all purchased one of Evenflo's Big Kid booster car seats, giving rise to substantially the same claims.

61.    **Adequacy**.  Plaintiffs are adequate representatives of the proposed Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on Class members' behalf.

62.    **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Evenflo economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the same issues, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

63. In the alternative, the proposed Classes may be certified because:

    a. The prosecution of separate actions by the individual members of the proposed Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Evenflo;

    b. The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party Class members or which would substantially impair their ability to protect their interests; and

    c. Evenflo has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed Classes as a whole.

### FIRST CLAIM

**Violation of the Ohio Consumer Sales Practices Act,**

**Oh. Rev. Code § 1345.01, *et seq.***

**(On behalf of the proposed Ohio Class)**

64. Plaintiff Woodson realleges and incorporates the above paragraphs.

65. Evenflo is a "supplier" as defined by § 1345.01(C).

66. Plaintiff Woodson and members of the proposed Ohio Class are "consumers" as defined by § 1345.01(D), and their purchase of Evenflo's Big Kid seats are "consumer transactions" within the meaning of § 1345.01(A).

67. Evenflo violated § 1345.02 by virtue of its unfair and deceptive acts and practices in connection with the sale and solicitation of its Big Kid seats.

68. As described above, Evenflo falsely and misleadingly marketed its Big Kid line of booster car seats as safe for children as small as 30 pounds when they are not. Evenflo also

24

deceptively represented that its Big Kid seats had been side impact tested, and that its side impact test protocol meets or exceeds all applicable federal safety standards, when in reality no federal agency has announced a side impact collision test for child safety seats, and the results of Evenflo's side impact testing show that using its Big Kid seats would not make children safer in a side impact collision. Evenflo also consistently failed to disclose the safety risks to children using Big Kid seats despite knowing of the hazards they posed.

69.     As a direct and proximate result of Evenflo's unlawful methods, acts, and practices, Plaintiff Woodson and the members of the proposed Ohio Class suffered injury because they paid more for their Big Kid seats than they otherwise would have, if they would have purchased them at all. Meanwhile, Evenflo has sold more Big Kid seats than it otherwise could have and charged inflated prices for the seats, unjustly enriching itself.

70.     The Ohio Attorney General made available for public inspection the following state court decisions which have held that the acts and omissions of Evenflo as detailed above, including, but not limited to, the failure to honor implied warranties and the concealment and nondisclosure of a material facts about the safety and performance of the product in question, constitute deceptive sales practices in violation of Ohio's Consumer Sales Practices Act:

   a.  *Bellinger v. Hewlett-Packard Co.* (OPIF #10002077);

   b.  *Borror v. MarineMax of Ohio* (OPIF #10002388);

   c.  *Brown v. Spears* (OPIF #10000403);

   d.  *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025); and

   e.  *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304).

71.     Pursuant to § 1345.09, Plaintiff Woodson and the members of the proposed Ohio Class seek damages, revocation, rescission, injunctive relief, and their reasonable costs and attorney fees.

## SECOND CLAIM
### Breach of Implied Warranty in Tort
### (On behalf of the proposed Ohio Class)

72.     Plaintiff Woodson realleges and incorporates the above paragraphs.

73.     Evenflo impliedly warranted to Plaintiff Woodson and members of the proposed Ohio Class that its Big Kid seats were of a certain quality, were fit for the ordinary purpose for which they would be used, and conformed to the promises or affirmations of fact made on their container or label.

74.     Specifically, Evenflo impliedly warranted that its Big Kid seats are safe for children as small as 30 pounds, have been side impact tested, and that Evenflo's side impact test protocol meets or exceeds all applicable federal safety standards.

75.     Evenflo's Big Kid seats would not pass without objection in the child car safety seat trade because contrary to Evenflo's implied warranties, its Big Kid seats fail to provide children side impact protection, and are unsafe for children as small as 30 pounds, which makes them unsafe and unfit for the ordinary purposes for which such booster seats are used.

76.     Prior to purchase, Plaintiff Woodson and members of the proposed Ohio Class could not have discovered that Evenflo's Big Kid seats were not fit for their ordinary purpose and did not conform to the quality previously represented.

77.     Evenflo has failed to meet the expectations of a reasonable consumer. Evenflo's actions have deprived Plaintiff Woodson and the members of the proposed Ohio Class of the benefit of their bargain, and have caused Plaintiff Woodson and members of the proposed Ohio

Class to pay more for their Big Kid seats than they otherwise would have, if they would have purchased them at all.

78.     As a direct and proximate result of Evenflo's breach of its duties, Plaintiff Woodson and the members of the proposed Ohio Class received goods whose condition substantially impairs their value. Plaintiff Woodson and the members of the proposed Ohio Class have been damaged by paying more for their Big Kid seats than they otherwise would have, if they would have purchased them at all.

79.     Plaintiff Woodson and the members of the proposed Ohio Class are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the affected booster seats or the overpayment or diminution in value of their booster seats, and are also entitled to reasonable attorney fees and costs.

**THIRD CLAIM**

**Deceptive Consumer Sales**

**Ind. Code § 24-5-0.5 *et seq.***

**(On behalf of the proposed Indiana Class)**

80.     Plaintiff Brown realleges and incorporates the above paragraphs.

81.     The Indiana Deceptive Consumers Sales statute prohibits any "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."

82.     Evenflo is a "supplier" within § 24-5-0.5-2(a)(3), and has engaged in "consumer transactions," within the meaning of § 24-5-0.5-2(a)(1), with Plaintiff Brown and members of the proposed Indiana Class.

83.     Evenflo's acts and practices violate § 24-5-0.5-3(a) of the Indiana Deceptive Consumer Sales statute for at least the following reasons:

a. Evenflo represents that its Big Kid seats have characteristics, uses, and benefits which they do not have;

b. Evenflo advertises its Big Kid seats with the intent not to sell them as advertised;

c. Evenflo represents that its Big Kid seats are of a particular standard, quality, and grade when they are not;

d. Evenflo represents that its Big Kid seats have been supplied in accordance with a previous representation when they have not; and

e. Evenflo omitted material information in connection with its marketing, distribution, and sale of Big Kid seats.

84.    As described above, Evenflo falsely and misleadingly marketed its Big Kid line of booster car seats as safe for children as small as 30 pounds when they are not. Evenflo also deceptively represented that its Big Kid seats had been side impact tested, and that its side impact test protocol meets or exceeds all applicable federal safety standards, when in reality no federal agency has announced a side impact collision test for child safety seats, and the results of Evenflo's side impact testing show that using its Big Kid seats would not make children safer in a side impact collision. Evenflo also consistently failed to disclose the safety risks to children using Big Kid seats despite knowing of the hazards they posed.

85.    Had Evenflo not engaged in deceptive marketing and instead adequately disclosed the safety risks presented by its Big Kid seats, Plaintiff Brown, members of the proposed Indiana Class, and reasonable consumers would not have purchased, or would have paid less for, their seats.

86.     As a direct and proximate result of Evenflo's deceptive trade practices, Plaintiff Brown and Indiana Class members suffered injuries, including by paying more for their Big Kid seats than they otherwise would have, if they would have purchased them at all.

87.     The above unfair and deceptive practices and acts by Evenflo were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

88.     Evenflo knew its Big Kid seats were not safe for children as small as 30 pounds, and that its side impact test protocol did not meet or exceed all applicable federal safety standards. Evenflo's actions described above were intended to defraud consumers about these facts, and are therefore "incurable" within the meaning of § 24-5-0.5-5(a).

89.     Plaintiff Brown and the proposed Indiana Class seek relief under § 24-5-0.5-4, including, not limited to damages, restitution, penalties, injunctive relief, and attorneys' fees and costs.

## FOURTH CLAIM
### Deceptive Acts and Practices
### N.Y. Gen. Bus. Law § 349
### (On behalf of the proposed New York Class)

90.     Plaintiff Berkley realleges and incorporates the above paragraphs.

91.     Plaintiff Berkley and members of the proposed New York Class are "persons" within the meaning of N.Y. Gen. Bus. § 349(h).

92.     Evenflo is a "person, firm, corporation or association or agent or employee thereof" within the meaning of N.Y. Gen. Bus. § 349(b).

29

93. Evenflo engaged in deceptive acts and trade practices in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling its Big Kid line of booster car seats as safe for children as small as 30 pounds when they are not.

94. Evenflo also deceptively represented that its Big Kid seats had been side impact tested, and that its side impact test protocol meets or exceeds all applicable federal safety standards, when in reality no federal agency has announced a side impact collision test for child safety seats, and the results of Evenflo's side impact testing show that using its Big Kid seats would not make children safer in a side impact collision. Evenflo also consistently failed to disclose the safety risks to children using the Big Kid seats despite knowing of the hazards they posed.

95. These acts and practices were consumer-oriented because they had a broad impact on consumers at large, affecting all purchasers of Evenflo Big Kid seats.

96. Evenflo had exclusive knowledge of the facts concerning its Big Kid seats' safety and performance, and failed to disclose these facts despite having a duty to disclose this material information to Plaintiff Berkley and members of the proposed New York Class.

97. Plaintiff Berkley and members of the proposed New York Class were unaware, and did not have reasonable means of discovering, the material facts that Evenflo both misrepresented and failed to disclose.

98. Evenflo's failure to disclose material facts concerning the performance and safety of its Big Kid seats was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Evenflo's conduct.

99. As a direct and proximate result of the Evenflo's unlawful acts, Plaintiff Berkley and members of the proposed New York Class have been harmed, because, among other reasons,

they paid more for their Evenflo's Big Kid seats than they otherwise would have, if they would have purchased them at all.

100. Evenflo's acts and practices were willful and knowing.

101. Plaintiff Berkley and the proposed New York Class are entitled to injunctive relief, recovery of actual damages or fifty dollars per violation (whichever is greater), treble damages up to one thousand dollars, and their reasonable costs and attorneys' fees. *See* N.Y. Gen. Bus. § 349(h).

## FIFTH CLAIM
### Deceptive and Unfair Sales Practices
### Utah Code Ann. § 13-11-1 *et seq.*
### (On behalf of the proposed Utah Class)

102. Plaintiff Bloswick realleges and incorporates the above paragraphs.

103. The Utah Consumer Sales Practices Act prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction."

104. Evenflo is a "supplier" within the meaning of § 13-11-3(6), and has engaged in "consumer transactions" within the meaning of § 13-11-3(2), with Plaintiff Bloswick and members of the proposed Utah Class.

105. Plaintiff Bloswick and the members of the proposed Utah Class are "persons" within the meaning of § 13-11-3(5).

106. Evenflo's acts and practices violate § 13-11-4(2) of the Utah Consumer Sales Practices Act statute for at least the following reasons:

    a. Evenflo represents that its Big Kid seats have characteristics, uses, and benefits which they do not have;

b.  Evenflo advertises its Big Kid seats with the intent not to sell them as advertised;

c.  Evenflo represents that its Big Kid seats are of a particular standard, quality, and grade when they are not;

d.  Evenflo represents that its Big Kid seats have been supplied in accordance with a previous representation when they have not; and

e.  Evenflo omitted material information in connection with its marketing, distribution, and sale of Big Kid seats.

107.    As described above, Evenflo falsely and misleadingly marketed its Big Kid line of booster car seats as safe for children as small as 30 pounds when they are not. Evenflo also deceptively represented that its Big Kid seats had been side impact tested, and that its side impact test protocol meets or exceeds all applicable federal safety standards, when in reality no federal agency has announced a side impact collision test for child safety seats, and the results of Evenflo's side impact testing show that using its Big Kid seats would not make children safer in a side impact collision. Evenflo also consistently failed to disclose the safety risks to children using Big Kid seats despite knowing of the hazards they posed.

108.    Had Evenflo not engaged in deceptive marketing and instead adequately disclosed the safety risks presented by its Big Kid seats, Plaintiff Bloswick, members of the proposed Utah Class, and reasonable consumers would not have purchased, or would have paid less for, their seats.

109.    As a direct and proximate result of Evenflo's deceptive trade practices, Plaintiff Bloswick and Utah Class members suffered injuries, including by paying more for their Big Kid seats than they otherwise would have, if they would have purchased them at all.

110.    The above unfair and deceptive practices and acts by Evenflo were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

111.    Evenflo knew that its Big Kid seats were not safe for children as small as 30 pounds, and that its side impact test protocol did not meet or exceed all applicable federal safety standards. Evenflo's actions in engaging in the above unfair practices and deceptive acts were negligent, knowing and willful, wanton, and reckless with respect to the rights of members of the Utah Class.

112.    Plaintiff Bloswick and members of the proposed Utah Class seek relief under Utah Code § 13-11-19, including, not limited to injunctive and declaratory relief, restitution, and attorneys' fees and costs.

## SIXTH CLAIM
### Breach of Implied Warranty
### (On behalf of each of the proposed Indiana, New York, and Utah Classes)

113.    Plaintiffs reallege and incorporate the above paragraphs.

114.    Evenflo is in the business of manufacturing, designing, marketing, and distributing Big Kid seats for sale to the public.

115.    Evenflo impliedly warranted to Plaintiffs and Class members that its Big Kid seats were of a certain quality, were fit for the ordinary purpose for which Big Kid seats would be used, and conformed to the promises or affirmations of fact made on the container or label.

116.    Evenflo provided Plaintiffs and members of the proposed Classes with an implied warranty of merchantability in connection with the purchase of their Big Kid seats. As part of the implied warranty of merchantability, Evenflo warranted that its Big Kid seats were fit for their

33

ordinary and particular purpose, were of a certain quality, would pass without objection in the trade, and were adequately contained, packaged, and labeled.

117.    Specifically, Evenflo impliedly warranted that its Big Kid line of booster car seats are safe for children as small as 30 pounds, had been side impact tested, and that its side impact test protocol meets or exceeds all applicable federal safety standards.

118.    Evenflo's Big Kid seats would not pass without objection in the child car safety seat trade because contrary to Evenflo's implied warranties, its Big Kid seats fail to provide children side impact protection, and are unsafe for children as small as 30 pounds, which makes them unfit for the ordinary purposes for which such booster seats are used.

119.    Evenflo's conduct described above constitutes a breach of implied warranty under section § 2-314 of the Uniform Commercial Code. At all times, Indiana, New York, and Utah have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability.

120.    Evenflo's actions have deprived Plaintiffs and the members of the proposed Classes of the benefit of their bargains, and have caused their Big Kid seats to be worth less than what they paid for them.

121.    As a direct and proximate cause of Evenflo's breach of warranty, Plaintiffs and the other members of the proposed Classes received goods whose condition substantially impairs their value.

122.    Plaintiffs and members of the proposed Classes have been damaged by the diminished value of their Big Kid seats, and are entitled to damages, as well as reasonable attorneys' fees and costs.

**SEVENTH CLAIM**

**Unjust Enrichment**

**(On behalf of the proposed Ohio, Indiana, New York, and Utah Classes)**

123.    As described above, Evenflo falsely and misleadingly marketed its Big Kid seats as safe for children as small as 30 pounds when they are not. Evenflo also deceptively represented that its Big Kid seats had been side impact tested, and that its side impact test protocol meets or exceeds all applicable federal safety standards, when in reality no federal agency has announced a side impact collision test for child safety seats, and the results of Evenflo's side impact testing show that using its Big Kid seats would not make children safer in a side impact collision. Evenflo also consistently failed to disclose the safety risks to children using Big Kid seats despite knowing of the hazards they posed.

124.    As a result of its fraudulent acts and omissions related to its Big Kid seats, Evenflo obtained monies which rightfully belong to Plaintiffs and the proposed Classes.

125.    Evenflo appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and members of the proposed Classes, who, without knowledge that Evenflo's Big Kid seats were unsafe, paid a higher price for their Big Kid seats than those seats were worth. Evenflo also received monies for Big Kid seats that Plaintiffs and members of the proposed Classes would not have otherwise purchased.

126.    It would be inequitable and unjust for Evenflo to retain these wrongfully obtained profits.

127.    Evenflo's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

128.    Plaintiffs and the members of the proposed Classes are entitled to restitution of the profits unjustly obtained, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

a.      An order certifying the proposed Classes and appointing Plaintiffs' counsel to represent the Classes;

b.      An order awarding Plaintiffs and Class members their actual damages, punitive damages, and any other form of monetary relief provided by law;

c.      An order awarding Plaintiffs and the Classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d.      An order enjoining Evenflo's wrongful conduct;

e.      An order awarding Plaintiffs and the Classes pre-judgment and post-judgment interest as allowed under the law;

f.      An order awarding Plaintiffs and the Classes reasonable attorney fees and costs of suit, including expert witness fees; and

g.      An order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable under the law.


Respectfully submitted,

/s/ *Shawn K. Judge*
Shawn K. Judge (0069493), Trial Attorney
sjudge@isaacwiles.com
Mark H. Troutman (0076390)

36

mtroutman@isaacwiles.com
ISAAC WILES BURKHOLDER & TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Telephone: (614) 221-2121
Facsimile: (614) 365-9516

Eric H. Gibbs (*pro hac vice* to be filed)
ehg@classlawgroup.com
David Stein (*pro hac vice* to be filed)
ds@classlawgroup.com
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

*Attorneys for Plaintiffs*